In the matter of the application of PATRICK DEGNAN for letters of administration on the estate of Nellie Moran, deceased.

[Decided December 7th, 1908.]

1. The husband of a married woman dying intestate is entitled to administration upon her estate, but if he be dead, or does not apply, then the grant of letters must be to her next of kin, unless there be some personally disqualifying objection to the applicant, and the probate court has no discretion in the matter and cannot ignore the claims of the persons mentioned, their right to administer in the respective cases being paramount.

2. Choses in action left by a wife dying intestate pass to her administrator, who may be her husband, but if another shall administer such administrator will hold her choses in action as well as her personalty *in specie,* after the payment of her debts, in trust for the benefit of her husband if he be living, or for his representative if he be dead; the rule being that the right of the husband to the personal property left by the wife upon her death intestate does not depend upon his conversion or reduction of the same to his own use or possession after her death.

On appeal from the Hudson county orphans court on an application for letters of administration on the estate of Nellie Moran, deceased.

*Mr. Edward Kenny,* for the appellant.

*Mr. Joseph M. Branegan,* for the respondent.

WALKER, VICE-ORDINARY.

This is an appeal from an order of the Hudson county orphans court made on June 12th, 1908, in which it was decreed that the title and interest in certain shares of a building and loan association are part of the assets of the estate of John Moran, deceased, and that the association shall pay or cause to be paid, or credit the sum due upon them, to the executors of the estate of the late John Moran.

The facts of the case are these: On January 13th, 1908, Patrick Degnan presented a verified petition to the surrogate of the county of Hudson, in which he showed that he was a brother of Nellie Moran, who departed this life intestate September 19th, 1907; that she left her surviving her husband, John Moran, and the petitioner, and no other relatives; that John Moran died December 22d, 1907; that he never took out letters of administration on the estate of his wife and never reduced her property into his possession; that the only property of which she died possessed was five shares of the capital stock of the People's Building and Loan Association of the town of Harrison, which were of the value of $800 as nearly as he could ascertain, and therefore he applied for administration of her estate.

On January 29th, 1908, the Rev. Thomas A. Conroy, presented a verified petition to the surrogate of the county of Hudson, in which he showed that Nellie Moran departed this life intestate as set forth in her brother's petition, and left her surviving John Moran, her husband, who died December 22d, 1907, and that he, the petitioner, was the executor of the last will and testament of John Moran, appointed as such on January 8th, 1908; that the intestate (Nellie Moran) was possessed of personal property to the value of $800 as nearly as he could ascer-

tain, and therefore he applied for letters of administration of her estate.

On February 5th, 1908, a citation was issued out of the Hudson county orphans court directed to the Rev. Thomas A. Conroy and Patrick Degnan, commanding them to appear before that court on February 21st, then instant, to answer unto the applications for letters of administration on the estate of Nellie Moran, deceased. This process was not in proper form. It required each applicant to answer to his own as well as his rival claimant's petition for administration. It should have recited that a dispute having arisen as to the right of administration upon the estate of Nellie Moran, deceased, the parties were cited and warned to appear before the Hudson county orphans court on the date named, at which time and place the court would hear and determine the matter in controversy. See *Kocher's Orph. Ct. Pr. 451 form 183*. However, this is merely formal, and no objection was made on this score in the court below, nor is it urged here, nor could it very well be made the subject of objection.

On April 24th, 1908, a memorandum was filed in the Hudson county orphans court by Judge Blair, as follows: "Administration will be given to the next of kin of Nellie Moran, Patrick Degnan."

On June 12th, 1908, the order appealed from was entered. It entirely ignores (while setting aside) the memorandum of April 24th, 1908. The order is in the following words and figures:

"Application being made for letters of administration on the estate of Nellie Moran, deceased, and it appearing that Nellie Moran died September 18, 1907, leaving her surviving her husband, John Moran, who died December 25th, 1907, leaving a will which was admitted to probate by the Hudson county surrogate on the eighth day of January 1908, and it appearing that *Ellen* Moran was the holder of pass book No. 6660 in the Peoples Building & Loan Association of Harrison, and that after her death until the death of John Moran he had paid the premiums on the said shares and then (thus) indicated a determination to reduce same to his possession. It is on this twelfth day of June, 1908, ordered and decreed that the said right, title and interest in the Building & Loan shares, as evidenced by pass book No. 6660 is part of the assets of the estate of John Moran, deceased, and that the Building & Loan Associa-

tion upon the presentation of a certified copy of this order shall pay or cause to be paid or credit with the sum now due to the Executor of the estate of John Moran."

Returned with the transcript from the orphans court in this matter is an agreed state of facts which reads as follows:

"Nellie Degnan Moran was married to John Moran Sept. 18, 1887, died in Sept. 19, 1907. She had in her own name five shares of the Peoples Building Loan Association of Harrison, New Jersey, which were issued to her Sept. 19, 1889. Those shares are now worth the sum of $616.40, of which $500 is the amount paid for them, and the balance is the accrued interest, viz: $116.40.

"Her husband John died January 23, 1907. He never .applied for nor took out letters of administration on the estate of his wife. He never reduced her chose in action to possession.

"She left her surviving at the time of her death no children, no father nor mother, no brother or sister except her brother Patrick Degnan of East Newark, New Jersey; and she left surviving her no child of any deceased brother or sister.

"There were no children born of her marriage with John Moran. During the time of her marriage she worked at dressmaking and earned considerable money in that occupation."

The day after the making of the order above recited by the Hudson county orphans court, Patrick Degnan, the brother and next of kin of Nellie Moran, deceased, appealed therefrom to this court and prayed that the order of the orphans court might be set aside and that letters of administration upon the estate of the decedent might be ordered to be granted to him, and for further or other relief.

The order appealed from is erroneous in two particulars— *first,* because it makes no grant of administration upon the estate of Nellie Moran, deceased, and *second,* because the orphans court was without power to adjudicate as to the ownership of the building loan shares and order paid or credited to the executor of the estate of John Moran the amount or value of those shares.

It is to be observed that each of the parties before the orphans court of the county of Hudson prayed for a grant of administration upon the estate of Nellie Moran, deceased. The Orphans Court act (*Revision of 1898; P. L. 1898 p. 715 § 27*) provides that if any person die intestate administration of the goods, chattels and credits of such intestate shall be admitted or granted

to the widow or the next of kin of such intestate, or to some one of them, if they or any of them will accept the same, and if none of them will accept thereof, then to such other proper person or persons as will accept the same. In *Donnington* v. *Mitchell, 2 N. J. Eq. (1 Gr. Ch.) 243, 247,* it was held that the husband is entitled to administration because he is entitled to the wife's estate, not as her next of kin, for he is not, strictly speaking, of kin to his wife at all. See, also, *Dick. Prob. Ct. Pr. 38, 39; Kocher's Orph. Ct. Pr. 61.* This was so under the probate practice of England, and is expressly recognized by our Orphans Court act. *P. L. 1898 p. 715 § 170.*

In *Fielder* v. *Hanger, 3 Hagg. Ec. 770,* the prerogative court of Canterbury granted administration *de bonis non* of a *feme covert* to the representative of the husband, who had taken out administration and died without fully administering, and remarked that the same grant would have been made if the husband had not taken out administration unless it could be shown that he had not the interest, but that the property belonged to the wife's next of kin. This practice appears never to have obtained with us, although the rule that a residuary legatee will be appointed in preference to the next of kin has so obtained, notwithstanding the statute. *In re Will of Kirkpatrick, 22 N. J. Eq. (7 C. E. Gr.) 463, 466; Booraem's Case, 55 N. J. Eq. (10 Dick.) 759.*

The right of the husband to administration of his wife's estate first arose under the statute of *31 Edw. III. c. 11,* "as the next and most lawful friend" of the deceased, which right, as well as the right to the property, the husband has under the statute of *29 Car. II. c. 3 § 25,* notwithstanding the statute of distributions. *22 and 23 Car. II. c. 10.*

This whole subject is ably and interestingly reviewed in *2 Hagg. Ec. Appendix 170,* in a note by the reporter, but a discussion of the English practice is here unnecessary, because our statute is entirely controlling.

As already remarked, our Orphans Court act gives the husband the right to administer, and, in the absence of a surviving husband, administration must be granted to the next of kin whose right is paramount unless there be some personally disqualifying objection to the applicant. *Donahay* v. *Hall, 45 N. J. Eq. (18*

*Stew.*) *720, 722; Cramer* v. *Sharp, 49 N. J. Eq.* (*4 Dick.*) *558.* Where there is no husband or widow, administration must be granted to the next of kin, if any of them are fit and competent and will accept. *Sayre* v. *Sayre, 48 N. J. Eq.* (*3 Dick.*) *267.*

Upon application to the surrogate of Hudson county for administration upon the estate of Nellie Moran, which was the question before the Hudson county orphans court, the only order which should have been.properly made was one granting administration to the next of kin of Nellie Moran, namely, her brother, Patrick Degnan, the appellant, and that should have been the order of the court. The administrator, however, when appointed will be considered in equity, with the respect to the residue of the estate, after payment of debts, as trustee for the husband's representative. This was expressly decided in *Donnington* v. *Mitchell, ubi supra,* upon the authority of several cases cited in *2 N. J. Eq.* (*1 Gr. Ch.*) *247,* and the same doctrine has been held to in this state ever since.

In *Nelson* v. *Nelson, 57 N. J. Eq.* (*12 Dick.*) *118,* the wife devised and bequeathed all of her real and personal estate to her husband, and after his death with remainder in certain realty to certain persons, and she therefore died intestate as to the remainder of her personalty. In a contest over the same between the next of kin of both husband and wife, Vice-Chancellor Emery held (at *p. 122*) that the right of the husband to the wife's personal property, undisposed of by her will, does not depend upon his actual conversion of her estate after her death to his own use, and so far as the same has not been administered or converted by him, the administrator *de bonis non* of the wife's estate will hold the estate in trust to pay over to the husband's administrator after paying the debts of the wife's estate.

It is to be observed that the Hudson orphans court, in the order appealed from, adjudged that the deceased husband had done certain acts which indicated a determination to reduce to his possession the choses in action (for such they were) which were left by his deceased wife. It was not necessary for John Moran to have reduced these choses into possession to entitle his estate to, the beneficial interest in them, nor does such beneficial interest give his personal representative the right to administer

upon the estate of Nellie Moran as against her next of kin, much less does it afford the orphans court any power to make an order that the People's Building and Loan Association of Harrison should pay or cause to be paid to John Moran's executor the sum due upon the shares of which Nellie Moran died possessed. The building association was not before the orphans court and the decree as to it was clearly *coram non judice.* Besides, I cannot understand how the Hudson county orphans court could have found that the husband had reduced the choses into possession before he died, which is practically what was decided in that regard, in the face of the agreed state of facts, which says that he did not do so.

In *Stoutenburg* v. *Hopkins, 43 N. J. Eq. (16 Stew.) 577,* Chancellor McGill, as ordinary, said in the prerogative court (at *p. 580*) (speaking to the question of the validity of a will), that if the will shall not be established, the husband will be entitled *jure mariti* to the wife's entire personal estate; citing *Donnington* v. *Mitchell, 1 Gr. Ch. 243.* This case was affirmed in *45 N. J. Eq. (18 Stew.) 390,* on the opinion of the ordinary in the prerogative court.

In *Folwell's Case,* in the prerogative court, *67 N. J. Eq. (1 Robb.) 570,* Chancellor Magie, as ordinary (at *p. 572*), remarked that. if Mrs. Folwell had died intestate her husband would have been entitled to all her personal property, the *jus mariti* in this respect having been recognized and preserved by section 170 of the Orphans Court act. *P. L. 1898 p. 870.* This case was reversed (see *Folwell's Case, 68 N. J. Eq. (2 Robb.) 728*), but upon the sole question whether or not the last will and testament of Mrs. Folwell bequeathed her personal estate to her daughter absolutely, and it remains an authority for the view which I take, to the full extent.

In *Wright* v. *Leupp, 70 N. J. Eq. (4 Robb.) 130,* Vice-Chancellor Pitney remarked (at *p. 133*) that by the common law which prevails in New Jersey, the husband is not only entitled to administration of his wife's estate lying in this state, but whoever may administer it, he is entitled to her whole net personalty. Hence, any fund which might come to the hands of the com-

plainant's administrator must after paying her debts go to the husband.

Counsel for the appellant contends that because Mr. Moran did not reduce his wife's choses in action into possession during his lifetime that the beneficial interest in those choses has passed to the next of kin of his deceased wife; but this position, as already shown, is not tenable. Counsel relies upon *Bacon* v. *Devinney*, 55 *N. J. Eq.* (*10 Dick.*) *449*, in which it was held that when a husband and wife both make payments to meet the dues of building association stock standing in the name of the wife, the presumption is that his payments were gifts to her. Even so, there is nothing in this view which militates against the husband's right to have his wife's personal property after her death, and, in fact, in that case, Vice-Chancellor Grey held (at *p. 454*), that the husband had a right to the ownership of the stock subject to the pledge made of it for the debt of the wife created in her lifetime. This is but a reaffirmance of the doctrine that the wife's personal property is subject to her debts and her surviving husband takes only the net surplusage of her personalty, and this, too, in effect, is decided in *Bacon* v. *Devinney* (at *p. 456*).

On behalf of the appellant reliance is also placed upon *Vreeland* v. *Ryno*, 26 *N. J. Eq.* (*11 C. E. Gr.*) *160*, in which Chancellor Runyon said (at *p. 162*), referring to the common law, that the husband had an interest in the choses in action of the wife which he could reduce to possession, and when so reduced, they became his absolutely, and on his death went to his representatives, but that such of them as had not been reduced to possession by him at his death, still remain hers, and at her death went to her representatives and not to his. But this case is in entire harmony with the cases in this state which hold that the beneficial interest in the deceased wife's property pass to the husband's representative after his death. In that case and in *Compton* v. *Pierson*, 28 *N. J. Eq.* (*1 Stew.*) *229, 232*, Chancellor Runyon simply adverted to the common law rule that the choses in action of the wife not reduced into possession by the husband in his lifetime went to her representatives at her death and not to his, and this where the wife survived the husband, and in both cases he referred to the fact that after the death of

the wife the husband, as her administrator, might reduce her choses in action into his possession and hold them *jure mariti*.

It must be conceded that choses in action belonging to the wife pass at her death to her representative. That representative may be the husband if he survives her, and, if he fails to take out administration, her administrator, after the payment of her debts, holds her personalty in trust for her husband if he be living, or for his representative if he be dead. There is no conflict between the cases; they are all in harmony and in entire accord.

The result is that the decree of the Hudson county orphans court must be reversed, and the record remitted to that court with instruction to grant administration on the estate of the late Nellie Moran to the appellant, who is her only surviving brother and next of kin.